UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

11 SEP 13 PM 2: 21

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

| | | |
|---|---|---|
| CHRISTINA SMITH, | ) | |
| Plaintiff, | ) | |
| v. | ) | CAUSE NO: |
| INDIANA UNIVERSITY HEALTH, INC. f/k/a CLARIAN HEALTH PARTNERS, INC. | ) | **1 : 11 -cv- 1 2 3 5 SEB -MJD** |
| Defendant. | ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Christina Smith ("Smith"), by counsel, and for her cause of action against the Defendant, Indiana University Health, Inc., f/k/a/ Clarian Health Partners, Inc. ("Defendant"), alleges and states as follows:

### I. Nature of the Case

1.  Smith brings this action pursuant to Title VII of the Civil Rights Act of 1964 (hereinafter 'Title VII'), 42 U.S.C. §2000e, *et. seq.*, as amended, for sexual harassment and subjecting her to a hostile work environment on account of her sex, female, and in retaliation for engaging in protected activity.

### II. Parties

2.  At all times relevant to this action, Smith resided within the geographical boundaries of the Southern District of Indiana.

3.  At all times relevant herein, Defendant is a domestic corporation with its principal engaged in the business of health care. Defendant has maintained and continued to maintain

1

offices and conduct business with the confines of the Southern District of Indiana.

### III. Jurisdiction and Venue

4. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. §1333, 28 U.S.C. § 1343, 42 U.S.C. §2000e-(3), and 42 U.S.C. §2000e-(5).

5. Smith was an "employee" as that term is defined by 42 U.S.C. §2000e(f).

6. Defendant is an "employer" as that term is defined by 42 U.S.C. §2000e(b).

7. Smith satisfied her obligation to exhaust her administrative remedies by timely filing charges with the U.S. Equal Employment Opportunity Commission. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in Smith's Charge. Smith received the appropriate Notice of Right to Sue and timely files this Complaint with ninety (90) days thereof.

8. As all events pertinent to this lawsuit occurred within the Southern District of Indiana, venue in this Court is proper.

### IV. Factual Allegations

9. Smith commenced her employment with Defendant on or about September 18, 2000, as a Pharmacy Technician. Smith continued with her education and subsequently became a Certified Pharmacy Technician and ultimately a Registered Nurse. Smith continuously met or exceeded the reasonable and legitimate expectations of her employment. In fact, Smith earned numerous "Silver Awards" for the exemplary care and was nominated for "Nurse of the Year."

10  On or about early January, 2008, Smith transferred to Defendant's Surgical Intensive Care Unit ("SICU").

11. On or about June 2008, Defendant placed Jonathan Skraback ("Skraback"), in the

SICU. He was later given the responsibility of Charge Nurse.

12. Upon information and belief, Skraback had a history of sexual harassing women of which Defendant was aware and has taken no action.

13. Beginning on or about mid-September, 2008, and continuing thereafter, Skraback regularly sexually harassed Smith. By way of example, but not limitation, these acts of sexual harassment included: regular and repeated sexually suggestive, lewd and inappropriate comments regarding Smith's appearance and/or clothing; telling Smith that he was unable to see "a line in [Smith's] pants, so she must not be wearing any underwear;" regularly asking Smith if she was wearing any underwear; asking Smith to "shake it some more;" telling Smith to bend over so he could look at her buttocks or look up her blouse so he "could see what he wanted to see;" telling Smith that he was "glad she wore white so he could see through her surgical blouse;" commenting on the size of Smith's breasts; inappropriately and impermissibly grabbing Smith's breasts; impermissibly and inappropriately gabbing and pulling down Smith's surgical smock in an effort to expose Smith's breasts; impermissibly and inappropriately grabbing and Smith's underwear or putting his hand down her surgical smock; impermissibly and inappropriately kissing Smith; and impermissibly and inappropriately and grabbing Smith's buttocks and rubbing his penis against her.

14. On each occasion, Smith rebuffed and objected to Skraback's sexual advances and told him that they were unwelcomed and demanded him to stop, but he failed to do so and continued to regularly sexually harass Smith.

15. Skraback's unwelcomed sexual advances were so pervasive as to create a hostile work environment.

16. On or about January 2009, Smith reported and complained to the Manager of the SICU, Michael Luebbehusen ("Luebbehusen") about the unwelcomed sexual harassment and hostile work environment, to no avail and the harassment continued. Rather than correct and remedy the harassment and hostile work environment, no disciplinary was taken against Skraback and he remained as a Charge Nurse and continued to be allowed to work on the same days as Smith.

17. On or about March 2009, Smith was approved for intermittent Family Medical Leave Act leave on account of her serious medical condition. Luebbehusen was aware of Smith's serious medical condition and approved intermittent leave.

18. On or about March 2009, Smith again complained to Luebbehusen about Skraback's continued unwelcomed sexual harassment and the hostile work environment, to no avail. Rather than correct and remedy the harassment and hostile work environment, Luebbehusen retaliated against Smith by giving her a copy of Defendant's policy on Workplace Violence and threatened to terminate her for "workplace violence" because she purportedly cursed at Skraback when she complained about his continued unwelcomed sexual harassment.

19. Immediately after complaining about the unwelcomed harassment to Luebbehusen, Skraback retaliated against Smith by, but not limited to, telling the personnel at the SICU that Smith had "tattled on him" and was "making up claims" of harassment; and calling Smith a "dumbass," "bitch" and "shitty nurse" to others within Defendant's intensive care unit.

20. On a regular basis thereafter, Smith continued to complain to Luebbehusen about the continued unwelcomed sexual harassment and hostile work environment, to no avail. Luebbehusen would often refuse to meet with Smith or state that "he did not have time for this."

21. On or about June 2009, Smith complained to Luebbehusen about Skraback's continued unwelcomed sexual harassment, to no on avail. Luebbehusen told Smith that "she had put herself out to be treated like this." Smith also complained about Skraback's retaliation, to no avail and was told "that's what you get when you tattle on someone."

22. Regularly and after each complaint of harassment, Smith would request for Luebbehusen to secure and review the SICU video camera/tapes because they would confirm her statements of Skraback's unwelcomed harassment, but Luebbehusen refused to do so.

23. Luebbehusen further retaliated against Smith by refusing her requests to train for Charge Nurse, or Preceptor, or to enroll her in training to receive dialysis patients. Similarly situated and less qualified and less senior employees who had not complained of sexual harassment were allowed to train.

24. As a result of Luebbehusen's failure to remedy Smith's continued complaints of unwelcomed harassment, on or about July/August 2009, Smith reported the sexual harassment and hostile work environment to Luebbehusen's superior, Cheryl Wolverton ("Wolverton"), and Devon Spilker ("Spilker"), of Defendant's Human Resources Department. Rather than remedy the situation, Spilker told Smith that "she had no leg to stand on" and "unless she was terminated, she did not have an EEOC charge" "and that it would be a waste of money for her to get an attorney."

25. On or about August 21, 2009, Luebbehusen retaliated against Smith by giving her a write-up for an alleged offense which had purportedly occurred over two (2) months prior. Smith disputed the offense.

26. At the same time, Luebbehusen retaliated against Smith by placing her on a

Performance Improvement Plan ("PIP") for alleged offenses occurring one (1) month prior. Smith disputed the alleged offenses. Included in the alleged offenses, Luebbehusen retaliated against Smith and placed her on a PIP for Smith "breaking the chain of command" and reporting Skraback's sexual harassment and the hostile work environment to Luebbehusen's supervisor and Defendant's Human Resources. .

27. On numerous occasions in response to the continued unwelcomed harassment and continued failure to remedy the harassment, Smith informed Luebbehusen that she would like a transfer from SICU to the trauma unit that had openings and which she could have transfer to on or about December, 2009. Luebbehusen retaliatorily refused to assist in Smith's transfer and adversely affected her career and retaliated against Smith by placing her on a PIP which rendered her unable to transfer.

28. A reasonable person would find that receiving a written warning and being placed on a PIP sufficient to deter a person from complaining about sexual harassment and cause a chilling effect of a person's rights under Title VII.

29. On or about November 23, 2009, Luebbenhusen further retaliated against Smith by giving her a written warning for excessive absences in an alleged violation of Defendant's attendance policy. The written warning was "supported" by days which Smith had been previously authorized off pursuant to her approved intermittent leave.

30. On or about the same time, Luebbehusen further retaliated against Smith by counseling her for an alleged "clinical judgment" error that had occurred over one month prior and she denied. No action was taken at the time of the alleged error in clinical judgment.

31. On or about January 11, 2010, Luebbehusen further retaliated against Smith for an

alleged patient complaint occurring on December 22, 2009. The complaint was the first complaint ever alleged against Smith. No action was taken against Smith at the time of the alleged incident. Smith denied the incident and was told by Luebbehusen that whatever "she had to say" in defense to the allegation "was unimportant."

32. On or about January 15, 2010, Luebbehusen further retaliated against Smith by unlawfully terminating her employment. When Smith inquired as to the reason for her termination, Luebbehusen laughed at her and handed her the termination paperwork.

33. Defendant's stated reason for terminating Smith is a pretext and/or is in retaliation for engaging in protected activity and reporting sexual harassment.

34. Smith has suffered harm as a result of the hostile work environment on account of her sex and due to the continued acts of sexual harassment and/or Defendant's refusal to take any remedial action all of which led to increased emotional distress at the workplace.

35. Similarly situated employees who have not engaged in statutorily protected activity have been held to a more lenient expectation of performance and not disciplined and denied training and advancement. .

36. Smith has been damaged as a result of Skraback's continuing unwelcomed sexual harassment, the retaliation she endured by Skraback and Luebbehusen, and Defendant's refusal to take any reasonable remedial action for a period of over sixteen (16) months.

### V. Legal Counts

### COUNT I - TITLE VII, SEXUAL HARASSMENT

37. Smith hereby incorporates paragraphs one (1) through thirty-six (36) of her Complaint as if fully restated herein.

38. Smith was sexually harassed during her employment with Defendant.

39. The sexual harassment was unwelcomed and was opposed by Smith.

40. Smith found Skraback's conduct offensive. The harassment was sufficiently severe and/or pervasive to constitute a hostile work environment.

41. On multiple occasions Smith complained about the sexual harassment and reported the sexual harassment to Defendant.

42. Defendant failed to take prompt remedial action in response to Smith's complaints as required by Title VII.

43. Defendant acted with intent, malice, and or reckless disregard as to Smith's legal rights under Title VII.

44. Smith suffered harm as a result of Defendants' violation of Title VII.

### COUNT II - RETALIATION

45. Smith incorporates paragraphs one (1) through forty-four (44) of her Complaint as if fully restated herein.

46. Smith was sexually harassed during her employment with Defendant.

47. The sexual harassment was unwelcomed and was opposed by Smith.

48. Skraback and Defendant was aware that Smith opposed the sexual harassment.

49. Smith engaged in statutorily protected activity when she opposed Skraback's sexual harassment and reported the acts to Defendant.

50. Smith suffered retaliatory adverse employment actions after engaging in statutorily protected activity and complaining of the sexual harassment.

51. Smith suffered retaliatory adverse employment actions by being denied the same

terms, conditions, and privileges of employment as those who did not engage in such protected activity. Defendant's unlawful actions put Defendant in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq.*

52. A causal connection exists between the protected activity and the adverse employment action.

53. Defendant's unlawful actions were willful, intentional, and done with reckless disregard for Smith's federal rights under the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e et seq.

54. Smith has and continues to suffer harm as a result of Defendant's unlawful actions.

## VI. Relief Sought

Wherefore, Plaintiff, Christina M. Smith, by counsel respectfully requests that this Court enter judgment in her favor and:

a) Order Defendant to reinstate Smith or to order up to three (3) years front pay in lieu thereof.

b) Order Defendant to pay Smith lost wages and benefits

c) Order Defendant to pay Smith for all compensatory damages for emotional distress, mental anguish, humiliation, embarrassment, inconvenience, and other intangible harm she has suffered a result of Defendants' violations;

d) Order Defendant to pay Smith punitive damages for its intentional violation of federal law;

e) Order Defendant to pay pre- and post-judgment interest on all sums recoverable;

f) Order Defendant to pay Smith's attorneys fees and costs incurred; and

g) Order all other relief that is just and proper.

Respectfully submitted,

*[signature]*

John H. Haskin (7576-49)

*[signature]*

Richard W. McMinn (13715-49)
Attorneys for Plaintiff

## VII. Demand for Jury Trial.

The Plaintiff, Christina Smith, by counsel, respectfully requests a trial by jury as to all issues deemed so triable.

Respectfully submitted,

*[signature]*

Richard W. McMinn (13715-49)

John H. Haskin & Associates, P.C.
255 North Alabama Street, Second Floor
Indianapolis, Indiana 46204
Telephone:   (317) 955-9500
Facsimile:    (317) 955-2570
jhaskin@hlllaw.com
rmcminn@hlllaw.com